# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>David Kline,<br><br>　　　　　Defendant. | Crim. No. 17-253 (MJD/BRT)<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Nathan Hoye Nelson, Esq., Assistant United States Attorney, counsel for Plaintiff.

Kassius O. Benson, Esq., Kassius Benson Law, PA, counsel for Defendant.

　　　Defendant David Kline was indicted on one count of conspiracy to distribute a controlled substance and one count of possession with intent to distribute a controlled substance. (*See* Doc. No. 1.) On January 2, 2018, Defendant moved to suppress evidence obtained as a result of the execution of a search warrant on his residence, and also to suppress statements that he made to police officers during the execution of the search warrant. (Doc. Nos. 55, 56.) The Government submitted two exhibits for the Court's review in connection with these motions: the search warrant application, affidavit, and warrant, and an audio recording of the custodial interview. (*See* Doc. No. 74, Ex. List.) Defendant waived his right to appear at the motions hearing, and the motions were submitted on the papers and taken under advisement as of February 12, 2018. (*See* Doc. No. 70.)

For the reasons stated below, this Court recommends that Defendant's motions be denied.

**I.      Factual Background**

On July 7, 2017, Officer Adam Lepinski ("Officer Lepinski") sought and obtained a warrant to search Defendant's residence in Eagan, Minnesota. (Ex. 1.) Beginning in May 2017, Officer Lepinski had been involved in an ongoing investigation of a group of individuals selling drugs in the Minneapolis area. (*Id.* at 2.) Search warrants related to this drug ring had previously resulted in the seizure of about three pounds of heroin, 1.5 pounds of crack cocaine, three guns, and tens of thousands of dollars. (*Id.*)

Officer Lepinski's affidavit in support of the July 7, 2017 search warrant detailed information received in May 2017 from a confidential reliable informant ("CRI") who was "knowledgeable about the narcotics ring." (Ex. 1 at 2.) According to the CRI, a person known as "B" was involved in the drug ring, selling large amounts of heroin and cocaine received from an unknown source in Chicago. (*Id.*) The CRI reported seeing "B" in possession of heroin, cocaine, and hundreds of thousands of dollars in cash on multiple occasions since April 2017. (*Id.*) The CRI also knew "B" to live "in a suburb south of Minneapolis." (*Id.*) The CRI further described "B's" vehicles, including a black Infiniti SUV. (*Id.*) The affidavit explained that the "CRI had provided information multiple times in the past and had been found to be accurate and reliable," and that the CRI's information had "led to the recovery of multiple firearms, narcotics" and resulted in arrests/charges. (*Id.*)

The CRI's information, according to the affidavit, was corroborated by a second confidential informant ("CI") who was knowledgeable about the same drug ring. (Ex. 1 at 2.) In June 2017, the CI provided "identical information regarding 'B' selling large amounts of heroin and cocaine." (*Id.*) The CI said he or she believed "B" lived in the "south metro" area and drives a black Infiniti SUV. (*Id.*)

Using "various investigative techniques," Officer Lepinski identified Defendant as "B." (Ex. 1 at 2.) Officer Lepinski showed a photograph of Defendant to the CRI and the CI, both of whom confirmed it was the correct individual. (*Id.*) Moreover, during the execution of a previous search warrant related to this drug ring in North Minneapolis on May 1, 2017, Officer Lepinski found a receipt near large amounts of heroin and crack cocaine. (Ex. 1 at 3.) The receipt was from a "Total Wine" store in Eagan, near Defendant's residence, and surveillance video from the store at the date and time listed on the receipt showed an individual that appeared to be Defendant. (*Id.*) Officer Lepinski showed a still image from the video to the CRI and CI, both of whom confirmed the person in the photo was Defendant. (*Id.*) Officer Lepinski ran a criminal history check on Defendant and found a conviction for first degree possession of crack cocaine. (*Id.*)

Through surveillance and the use of various law enforcement databases, Officer Lepinski determined that Defendant lived in the south metro area, identifying an apartment in Eagan, Minnesota as Defendant's residence. (*Id.* at 2–3.) Officer Lepinski also observed a black Infiniti SUV parked in the apartment's underground garage. (*Id.* at 3.) Within 72 hours prior to applying for the warrant at issue, Officer Lepinski went to

Defendant's apartment and used an "Ion Scan" swab on the door to the residence, which tested positive for the presence of cocaine. (*Id.* at 3.)

Officers executed the warrant on July 14, 2017, seizing various documents, car keys, a black duffel bag, and items of clothing. (Ex. 1 at 8.) During the execution of the warrant, Officer Lepinski had an audio-recorded conversation with Defendant. (Ex. 2.) The officer introduced himself to Defendant and explained he had a search warrant as part of a narcotics investigation and wanted to take the opportunity to speak with Defendant to see if he had "anything to say to us." (Ex. 2 at 0:22–0:50.) Defendant replied: "go ahead." (*Id.* at 0:50–52.) Officer Lepinski then read Defendant his rights and explicitly asked him "do you understand those?" (*Id.* at 0:50–1:40.) Defendant responded: "yeah." (*Id.* at 1:40–42.) Officer Lepinski explained to Defendant some information about the search warrant and proceeded to ask Defendant several questions, which were answered by Defendant. (*Id.* at 1:42–9:30.) At no time during the conversation did Defendant ask for an attorney or invoke his right to remain silent. (*See* Ex. 2.)

## II.   Analysis

Defendant argues that the July 7 warrant to search his apartment lacked probable cause because the information in the search warrant affidavit was "stale." (Doc. No. 68, Def.'s Mem. in Supp. of Mot. to Suppress Tangible Evid. 1.) Defendant also argues that the statements he made to Officer Lepinski during the execution of the search warrant should be suppressed because he was in custody and he did not explicitly waive his *Miranda* rights. (Doc. No. 67, Def.'s Mem. in Supp. of Mot. to Suppress Statements 1.)

**A.     Motion to Suppress Evidence Obtained From Apartment Search**

    **1.     The Warrant to Search Defendant's Apartment Was Supported by Probable Cause**

Probable cause, as it relates to a search, "is a fair probability that contraband or evidence of a crime will be found in the location searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). "The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. In analyzing the validity of a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). The role of a reviewing court is to "ensure that the issuing judge had a substantial basis for concluding that probable cause existed," and courts "owe substantial deference to the determination of probable cause by the issuing judge." *LaMore*, 100 F.3d at 552.

Defendant argues that the information in the warrant affidavit is stale because witnessing Defendant with drugs in April and June does not give rise to the belief that he would be in possession of drugs when the warrant was issued in July 2017. (Def.'s Mem. in Supp. of Mot. to Suppress Tangible Evid. 2–3.) "Probable cause must exist when a

warrant is issued, not merely at some later time, but there is no bright-line test for determining when information is stale . . . , and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008). "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009). The factors in determining whether probable cause has dissipated, rendering the warrant stale, "include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Estey*, 595 F.3d 836, 839 (8th Cir. 2010).

A lapse in time between information in an affidavit and the application for a warrant is "least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010). Narcotic conspiracies, such as the one at issue in the instant case, are "the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998).

In the context of an investigation into "ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily make the information stale." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017). The information provided by the CRI, which was further

6

corroborated by a separate informant, establishes a fair probability that Defendant was involved in an ongoing drug enterprise, and therefore, that drugs or other associated contraband would be found in his apartment. As stated in the search warrant application, in May 2017, the CRI reported having seen Defendant "in possession of heroin and cocaine multiple times since April 2017, along with several hundred thousand dollars in cash." (Ex. 1 at 2.) Later, in June 2017, a CI "who is also knowledgeable about the narcotics ring" provided "identical information regarding 'B' selling large amounts of heroin and cocaine." (*Id.*) Therefore, the lapse in time between Defendant being observed with drugs and large amounts of cash and the issuance and execution of the warrant does not render the warrant stale. *See United States v. Smith*, 266 F.3d 902, 904 (8th Cir. 2001) (upholding warrant based on controlled buys three months before warrant application); *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (finding that "with respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity").

In addition to Defendant being seen in the possession of drugs and large amounts of cash in recent months, Officer Lepinski conducted an "Ion Scan" swab on Defendant's door knob 72 hours before applying for the search warrant, which tested positive for the presence of cocaine. (Ex. 1 at 3.) This information suggests that the drug enterprise was still ongoing, and as a result, establishes a "fair probability" that evidence of drug

7

trafficking would be found in Defendant's apartment.[1] If the other information in the affidavit was stale due to the passage of time, this new information refreshed the existence of probable cause. *United States v. Carnahan*, 684 F.3d 732, 736 (8th Cir. 2012) ("The third buy, made within 72 hours of the warrant applications, can hardly be deemed stale information."); *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990) ("Where recent information corroborates otherwise stale information, probable cause may be found.").

### 2. The Good Faith Exception Applies if the Warrant Was Not Supported by Probable Cause

Evidence obtained in violation of the Fourth Amendment is admissible if the officers executing an invalid search warrant did so in good faith. *Ortiz-Cervantes*, 868 F.3d at 702 (citing *United States v. Leon*, 468 U.S. 897, 918–19 (1984)). "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). The Supreme Court has identified four situations in which an officer's reliance on a warrant would be unreasonable:

---

[1] Defendant argues that neither informant observed drugs in his apartment. (Def.'s Mem. in Supp. of Mot. to Suppress Tangible Evid. 2.) Even so, the information provided by the informants combined with the positive swab of Defendant's doorknob establishes a fair probability that drugs would be found in Defendant's apartment. *See United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) ("Although it is true that neither the informant nor the detective had actual knowledge that contraband was in Mr. Tellez's home, absolute certainty was not necessary: a fair probability is all that is required.").

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Id.* at 431.

Defendant does not contend that the affidavit contains a false statement or that the issuing judge wholly abandoned her judicial role. His only argument is that the information in the search warrant application was stale; but the nature of that information did not make the warrant facially deficient or render "official belief" in the existence of probable cause "entirely unreasonable." *Id.* The Eighth Circuit has applied the good faith exception to warrants based on much older information. *See United States v. Perry*, 531 F.3d 662, 667 (8th Cir. 2008) ("Although this evidence [from eight months ago] may be insufficient to support a probable cause finding, we do not think the information was clearly stale such that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."). The presence of cocaine on Defendant's doorknob within 72 hours of the warrant being issued further demonstrates that the officers' reliance on the search warrant was objectively reasonable.

### B.     Motion to Suppress Custodial Statements

"A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly and intelligently." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

9

There are "two distinct dimensions" to this inquiry. *United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* A waiver of *Miranda* rights "may be implied through the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Berhuis v. Thompkins*, 560 U.S. 370, 384 (2010). Thus, where the Government "shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016). Courts consider "the totality of the circumstances in determining whether a suspect's waiver is valid." *Gayekpar*, 678 F.3d at 638.

Defendant argues that his exchange with Officer Lepinski does not sufficiently show either that he understood his *Miranda* rights or continued speaking with Officer Lepinski voluntarily. (Def.'s Mem. in Supp. of Mot. to Suppress Statements 2–3.) To the contrary, Officer Lepinski read Defendant his rights, and Defendant responded "yeah" when Officer Lepinski asked him "do you understand those?" (Ex. 2 at 0:50–1:42.) Since Defendant then answered Officer Lepinski's questions, and there is no evidence that Defendant was pressured or coerced, he voluntarily waived his *Miranda* rights. *See Adams*, 820 F.3d at 323 ("Adams does not dispute that he was informed of his rights or

10

that he understood them. When Adams made uncoerced statements to Ball, he engaged in a course of conduct indicating waiver.").

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Tangible Evidence Obtained as a Result of Execution of Search Warrant on Defendant's Residence (Doc. No. 55) be **DENIED**; and

2. Defendant's Motion to Suppress Statements (Doc. No. 56) be **DENIED**.

Date: February 23, 2018.                *s/ Becky R. Thorson*_____
                                        BECKY R. THORSON
                                        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).